UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM IGLESIAS, | ) | Case No. 1:02CV258 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ANN ALDRICH |
| vs. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BAGLEY, | ) | |
| WARDEN | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |

On November 30, 1998, William Iglesias (Petitioner) pled guilty to one count of murder, four counts of felonious assault, and one count of aggravated robbery. *See* Electronic Case Filing (ECF) Dkt. #14, exhibit 9. Seeking to overturn his state conviction, Petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 on February 11, 2002. *See* ECF #1. In turn, Respondent filed an answer/return of writ on May 3, 2002, along with two supplements on May 7, 2002. *See* ECF Dkt. ##12, 18, and 19, respectively. In response, Petitioner moved to have the instant case placed in abeyance on May 16, 2002. *See* ECF Dkt. #20. Respondent filed objections on May 23, 2002, and Petitioner replied on June 5, 2002. *See* ECF Dkt. ##21, 22, respectively.

I.      FACTUAL BACKGROUND/PROCEDURAL HISTORY

At approximately 7:00 p.m. on May 21, 1998, Angel Montanez was operating a motor vehicle near the corner of Scranton and Beyerle Roads in Cleveland accompanied by his wife, Dawn Coleman,

1

and their two children.  *See* ECF Dkt. #14, exhibit 26.  Dawn was in the front passenger seat and the

children were located in the rear seat.  *See id.*  As Montanez proceeded on Scranton Road, he was

flagged down by Charles B. Coleman and Raoul Sanchez.  *See id.*  Montanez pulled into a driveway at

3261 Scranton Road and began conversing with Coleman and Sanchez.  *See id.*  Petitioner

approached the open driver's window and asked Montanez if he could borrow $20.  *See id.*  Petitioner

and Montanez were friends who had known one another for a number of years. *See id.*  After

Montanez refused Petitioner's request, Petitioner pulled out a nine millimeter pistol and fired two shots

into the vehicle.  *See id.*  One shot hit Montanez below the left shoulder, the second shot passed

through his neck and grazed Dawn Coleman's right leg.  *See id.*  Coleman and Sanchez began to flee

and Petitioner fired one or two shots in their general direction.  *See id.*  At least one of the bullets

ricocheted off the sidewalk cement or surrounding ground and tract; part of a slug penetrated

Coleman's bicycle tire and the partial slug was found on the porch at 3261 Scranton Road.  *See id.*

Twenty minutes later, Petitioner arrived at the home of Charles and Ruby Coleman at 3531

Beyerle.  *See* ECF Dkt. #14, exhibit 26.  They were the parents of Dawn Coleman and they also had

been friends of the Petitioner.  Petitioner again asked to borrow money.  *See id.*  When Ruby Coleman

denied his request, Petitioner shot at Charles Coleman putting a hole in the kitchen cabinet next to

where Coleman was standing.  *See id.*  Petitioner subsequently fled the Coleman residence and was

soon apprehended by the police.  *See id.*

On June 1, 1998, the Grand Jury for Cuyahoga County, Ohio returned a ten (10) count

indictment charging Petitioner with the following: *count on*e, aggravated murder, in violation of

Ohio Revised Code § 2903.01, with firearm specifications, mass murder specifications, and a felony

2

murder specification; *counts two through fiv*e, attempted aggravated murder, in violation of Ohio

Revised Code §§ 2923.02 and 2903.01, felonies of the first degree, with firearm specifications; *counts*

*six through eight,* aggravated robbery, in violation of Ohio Revised Code § 2911.01, felonies of the

first degree, with firearm specifications; *count nin*e, failure to comply with order or signal of police

officer, in violation of Ohio Revised Code § 2921.331, a felony of the third degree; and *count te*n,

improperly discharging a firearm into a habitation, in violation of Ohio Revised Code § 2923.161, a

felony of the second degree, with firearm specifications.  *See* ECF Dkt. #14, exhibit 2.

On July 20, 1998, Petitioner filed a motion requesting a competency evaluation and

appointment of mental health examiner.  *See* ECF Dkt. #14, exhibit 3.  On September 3, 1998,

Petitioner filed a motion for referral for sanity evaluation and appointment of psychiatrist.  *See id.*,

exhibit 4.  On September 3, 1998, by stipulation, Petitioner was found competent to stand trial as per

psychiatric clinic report dated August 26, 1998.  The defense motion for referral for sanity evaluation

and appointment of psychiatrist was denied.  Petitioner was, however, referred to the court psychiatric

clinic for an evaluation of his sanity at the time of the act.  *See id.*, exhibit 5.

On September 28, 1998, following a court hearing, Petitioner orally requested an

amendment to the indictment to reflect his name as William Iglesias AKA William Rodriquez.

The motion was granted.  *See* ECF Dkt. #14, exhibit 6.  On October 1, 1998, the court denied

Petitioner's oral motion to remove David Grant as counsel for defendant.  *See id.*, exhibit 7.

On October 29, 1998, the State of Ohio and the Petitioner stipulated to the findings of the

psychiatric clinic report dated October 15, 1998, as to Petitioner's sanity at the time of the act

and the court placed said report under seal.  *See id.*, exhibit 8.

On November 30, 1998, during the midst of jury selection, Petitioner pled guilty to murder with a three year firearm specification, as amended in *count one*; felonious assault with a three year firearm specification as amended in *counts two, three, four and five*; and aggravated robbery with a three year firearm specification as amended in *count eight* of the indictment. *See* ECF Dkt. #14, exhibit 9. On recommendation of the State, *counts six, seven, nine and ten* were nolled. *See id.*

On December 14, 1998, Petitioner, through counsel, filed a sentencing memorandum regarding merger of the gun specifications. *See* ECF Dkt. #14, exhibit 10. On December 29, 1998, the State filed a responsive sentencing memorandum regarding merger of firearm specifications. *See id.*, exhibit 11. On January 8, 1999, the court granted, in part, Petitioner's motion to merge firearm specifications, to wit: the court concluded that: the firearm specifications on *counts one and two* merged; the firearm specifications on *counts three and four* merged; the firearm specification on *count five* stands alone; and the firearm specification on *count eight* stands alone. The trial court further held that each of the four resulting firearm specifications must and shall be served consecutively to each other and all other sentences. *See id.*, exhibit 12.

On December 17, 1998, Petitioner, *pro s*e, filed a motion to withdraw guilty plea. *See* ECF Dkt. #14, exhibit 13. On December 31, 1998, the Petitioner, through counsel, filed a motion for appointment of counsel for purposes of arguing the *pro se* motion to withdraw guilty plea. *See id.*, exhibit 14. On January 8, 1999, following a hearing, the court denied petitioner's motion to withdraw guilty plea. *See id.*, exhibit 15.

On January 8, 1999, Petitioner filed his sentencing memorandum. *See* ECF Dkt. #14, exhibit

4

16.  On January 12, 1999, the Petitioner was sentenced to the following terms of incarceration: three (3) years mandatory on gun specification consecutive to fifteen (15) years to life on *count one*; three (3) years mandatory on gun specification consecutive to five (5) years definite on *count two*; *counts one and two* to be served concurrently; a term of three (3) years mandatory on gun specification consecutive to six (6) years definite on *counts three and four*; *counts three and four* to be served concurrently to each other, but consecutive to *counts one and two*; for a term of three (3) years mandatory on gun specification consecutive to six (6) years definite on *count 5*; three (3) years mandatory on gun specification to run consecutively with three (3) years definite on *count 8*; *count five* to be served consecutively with all other counts; *count eight* to be served concurrently with all other counts; net sentence is thirty-nine (39) years to life. *See id.*, exhibit 17.  On January 13, 1999, the trial court denied defendant's motion for appointment of appellate counsel. *See id.*, exhibit 18.  Subsequent thereto, on February 16, 1999, the trial court assigned appellate counsel. *See id.*, journal entry attached to exhibit 20.

On February 22, 1999, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth Appellate District from the judgment of conviction and sentence entered on January 12, 1999. *See* ECF Dkt. #14, exhibit 20.  On April 28, 1999, the appellate court, *sua sponte*, dismissed the appeal for failure to file a brief. *See id.*, exhibit 21.

On May 5, 1999, Petitioner, through counsel, filed an application for reconsideration and request for enlargement of time to file brief and assignment of errors. *See* ECF Dkt. #14, exhibit 22. The state appellate court granted the motion for reconsideration on May 10, 1999. *See id.*, exhibit 23. On July 9, 1999, Petitioner, through counsel, filed a brief and assignments of error. Petitioner raised five

assignments of error[1], to wit:

     I.     THE COURT ABUSED ITS DISCRETION WHEN IT WOULD NOT ALLOW DEFENDANT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING AND EXERCISE HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL.

     II.     THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR ALLIED OFFENSES IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE U.S. CONSTITUTION , WHEN IT REFUSED TO MERGE FIREARM SPECIFICATIONS.

     III.     MR. WILLIAM IGLESIAS' RIGHTS UNDER ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT DENIED THE MOTION TO REMOVE HIS INDIGENT COUNSEL BASED ON INEFFECTIVE ASSISTANCE, REFUSED TO APPOINT NEW COUNSEL AND FAILED TO ADVISE HIM THAT HE COULD PROCEED WITHOUT CURRENT COUNSEL OR REPRESENT HIMSELF AS PERMITTED BY THE SIXTH AMENDMENT.

     IV.     MR. WILLIAM IGLESIAS' CONSTITUTIONAL RIGHTS TO DUE PROCESS AS GUARANTEED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT DENIED THE EXPENSE OF A PRIVATE EVALUATION TO DETERMINE INDIGENT DEFENDANT'S COMPETENCY TO STAND TRIAL AND SANITY AT THE TIME OF THE OFFENSE.

     V.     MR. WILLIAM IGLESIAS WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE 1, SECTION OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

ECF Dkt. #14, exhibit 24 at 5.  On November 1, 1999, the State filed a brief opposing the assignments

---

[1] Petitioner's various assigned errors in his state and federal court filings contain both grammatical and spelling errors; the undersigned presents these assigned errors as they appear in Petitioner's filings.

of error raised by Petitioner. *See id.*, exhibit 25. On March 27, 2000, the state appellate court journalized its opinion affirming the trial court's judgment of conviction and sentence. *See id.*, exhibit 26.

On September 6, 2000, Petitioner, *pro se*, filed a notice of appeal and his motion for *delayed* appeal in the Ohio Supreme Court. Petitioner did not assert any propositions of law. *See* ECF Dkt. #14, exhibits 27 & 28. On October 18, 2000 the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed the appeal. *See id.*, exhibit 29. This decision was not appealed to the United States Supreme Court. *See id.*

On May 30, 2000, Petitioner, *pro se*, filed an application for reopening and filed his brief and assignments of error. *See* ECF Dkt. #14, exhibits 30 & 31. Petitioner raised four assignments of error, to wit:

I.    APPELLATE COUNSEL WAS DEFICIENT WHEN SHE FAILED TO CONSULT WITH HER CLIENT AND GET ACQUAINTED HIS CAUSE. AND WHEN SHE REFUSED TO REVEAL TO THE COURT THE CRUCIAL INFORMATION, HER CLIENT SENT HER, CAUSING IRREPARABLE PREJUDICE TO DEFENSE AND MAKING THE RESULT OF THE TRIAL UNRELIABLE. DENYING APPELLANT HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

II.   THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING DEFENDANT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING, AND PERMIT TO EXERCISE HIS CONSTITUTIONAL RIGHT OF TRIAL BY JURY.

III.  MR. WILLIAM IGLESIAS WAS DENIED HIS CONSTITUTIONAL RIGHT AT TRIAL, TO EFFECTIVE ASSISTANCE OF COUNSEL.

IV.   APPELLANT'S GUILTY PLEA WAS CONSTITUTIONALLY INVOLUNTARY, BEEN MADE UNKNOWINGLY AND UNINTELLIGENTLY, DUE TO THE INADEQUATE NOTICE OF THE

OFFENSES.  AND LACK OF EXPLANATION OF POSSIBLE STRATEGIES; OR USE OF MITIGATING FACTORS AND THE LACK OF THE REQUIRED CULPABILITY OF INTENT, PRIOR TO PLEA.   .

ECF Dkt. #14, exhibit 31.  On June 7, 2000, the State filed a memorandum in opposition to the application for reopening.  *See id.*, exhibit 32.  On June 8, 2000, Petitioner, *pro s*e, filed a second brief and assignment of errors reiterating the issues noted, *supra*.  *See id.*, exhibit 33.  On June 26, 2000, Petitioner, *pro s*e, filed a reply to the memorandum of law in opposition to application for reopening.  *See id.*, exhibit 34.  On October 12, 2000, the state appellate court denied Petitioner's application for reopening.  *See id.*, exhibit 35.

On October 23, 2000, Petitioner, *pro s*e, filed a motion for reconsideration of the denial of the application to reopen appeal.  *See* ECF Dkt. #14, exhibit 36.  On December 4, 2000, the state appellate court denied petitioner's motion for reconsideration.  *See id.*, exhibit 37.

On November 27, 2000, Petitioner, *pro s*e, filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme Court.  *See* ECF Dkt. #14, exhibits 38 & 39.  Petitioner asserted two propositions of law, to wit:

I.      THE EIGHT APPELLATE DISTRICT ABUSED ITS DISCRETION WHEN IT MOVED TO DENY IGLESIAS APPLICATION FOR REOPENING, MOTION NO. 17738, BECAUSE APPELLANT HAS PUT FORTH A COLORFUL CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. SUCH A DENIAL IS A MISFIT IN A COUNTRY DEDICATED TO AFFORDING EQUAL JUSTICE TO ALL AND NO SPECIAL PRIVILEGES TO NONE IN THE ADMINISTRATION OF ITS CRIMINAL LAW.    .

II.     THE COURT OF APPEALS ABUSED ITS DISCRETION, WHEN MISAPPLIED THE DOCTRINE OF RES JUDICATA IN THE CASE AT HAND, FOR IT IS RECOGNIZED THAT NO SINGLE WORD OR GROUP OF

WORDS CAN PROVIDE A PRECISE FORMULA THAT WILL DISPOSE OF EVERY CASE.

ECF Dkt. #14, exhibit 39.  On December 18, 2000, the state filed its memorandum in response to appellant's memorandum in support of jurisdiction.  *See id.*, exhibit 40.  On February 7, 2001, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  *See id.*, exhibit 41.  This decision was not appealed to the United States Supreme Court.

On February 11, 2002, Petitioner, *pro se*, filed the instant writ for habeas corpus relief  raising the following four grounds for relief:

**GROUND ONE:** Conviction obtained by plea of guilty which was not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

**SUPPORTING FACTS:** Trial counsels did not explain to me the nature of the charges, the trial judge did not tried to explained the element of intent for murder, nor any explanation or other charges. I did not knew that intent was part of the charge of murder, nor did I understood the nature of the charges I pled guilty to. No where on the records states that I was explained the nature of the charges, or that the trial judge tried to explained them to me. See copy of Tr. 232 and 239, where the judge addresses me in reference to the charge of murder, but did no questioned me about the true nature of the charge. Petitioner was told by trial counsels that there was nothing they could do to stop the prosecutor from convicting him of aggravated murder and was kept ignorant about the possible mitigating circumstances, this was the reason he pled.

**GROUND TWO:** Denial of effective assistance of appellate counsel, counsel joined the prosecutor when she totally ignored Iglesias or his requests. My sixth amendment right has been denied.

**SUPPORTING FACTS:** Appellate counsel did not informed me that she was going to file an appeal on my behalf, never contacted me in any form prior to the filing of the brief of appellant's. She conducted no investigation outside from reading  the trial records. I supplied her with crucial information to better informed the appeals court, but she refused to use it at all.  Counsel failed to raise the issue of involuntary plea after I requested it and provided even the case law to argue it. She withhold my post-conviction motions and caused me to default that proceeding. She refused to replied to the appellee's brief and in formed the court that I did not knew about the element of intent or understood it.

9

**GROUND THREE:** My fourteenth amendment to due process has been violated, and my right to a fair appeal as of right has been denied by the abuse of discretion of the Eighth Judicial District, when it denied my application for reopening direct appeal.

**SUPPORTING FACTS:** The journal entry is a clear arbitrary decision, which has been passed against the established federal rules. The used of the doctrine of res judicata it is an unjust application in the case at hand because I presented a colorable claim of ineffective assistance of appellate counsel and because I am appealing the judgment which is a deterrent course of action than the direct appeal. Also the court of appeal claims that I applied to the wrong court when I went to their court of appeal under App. 26(B), this was the same court that ruled against my direct appeal, they claim that I had to go first to the Ohio Supreme Court.

**GROUND FOUR:** The Ohio Supreme Court rules of appeals are unconstitutional and they are used in an abusive manner denying me my fourteenth amendment's fight to due process and equal protection of the law to receive an appeal as of right.

**SUPPORTING FACTS:** The Supreme Court of Ohio dismissed my appeal of right stating that I did not involve any substantial constitutional question, I was appealing the denial of my application for reopening my direct appeal, which is an abuse of discretion, because it is I claimed the ineffective assistance of appellate counsel, and the involuntariness of my guilty plea, which is the denial of my constitutional right to due process of law. I believe that the Supreme Court of Ohio as well as the appeals court abused its discretion with their entry.

*See* ECF #1.  In turn, Respondent filed an answer/return of writ on May 3, 2002, along with two supplements on May 7, 2002.  *See* ECF Dkt. ##12, 18, and 19, respectively.  In response, Petitioner moved to have the instant case placed in abeyance on May 16, 2002.  *See* ECF Dkt. #20. Respondent filed objections on May 23, 2002, and Petitioner replied on June 5, 2002.  *See* ECF Dkt. ##21, 22, respectively.[2]  Petitioner proceeded to file a motion for production of the record on June 17,

---

[2]  Prisoner complaints are deemed to be filed when they are delivered to prison officials for forwarding.  *See Wells v. Jefferson County Sheriff Dept*., 159 F.Supp.2d 1002, 1007 (S.D. Ohio 2001)(citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)).  Under *Houston v. Lack*, Petitioner is deemed to have filed his habeas corpus petition on February 4, 2002--the date he gave it to the prison mailing authorities.  *See* ECF Dkt. #22 at 1.  Respondent

2002.  *See* ECF Dkt. #23.

## II.     STANDARD OF REVIEW

A federal habeas petitioner must satisfy the doctrines of exhaustion and procedural default before the federal courts will review the merits of his petition.  Though a state prisoner may challenge the constitutionality of his state court conviction by seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, the state prisoner must first exhaust his available state court remedies by presenting his claims to the state courts to provide the courts an opportunity to remedy any constitutional infirmities in his conviction.

It is the petitioner's burden to prove exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994)(citing *Darr v. Burford*, 339 U.S. 200, 218-19, 70 S.Ct. 587, 597-98, 94 L.Ed. 761 (1950)).  "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Id.*(quoting *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990) (internal citations omitted)).  In fact, a habeas corpus petition containing at least one issue which was not presented to the state courts must be dismissed for failure to comply with the total exhaustion rule.  *See id.*(citing *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982))

Exhaustion though is only an issue if the state still provides a remedy for the habeas corpus petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm

---

concedes that the statute of limitations did not run until February 7, 2002.  The instant habeas corpus petition was therefore filed within the statute of limitations.  *See* ECF Dkt. #12 at 18, *and Beckovich v. Coyle*, 22 F.Supp.2d 722, 724 (N.D. Ohio 1998).

state court conviction. *See Rust*, 17 F.3d at 160. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of procedural default and then determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts. *See id.*

Any claims that the Court finds to have been procedurally defaulted will not be reviewable in federal habeas corpus, so that an evidentiary hearing with respect to defaulted claims would be neither necessary nor proper. A claim procedurally defaulted in state court will not be reviewable in federal habeas unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 751 (1991). "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the prejudice issue. *See Smith v. Murray*, 477 U.S. 527 (1986).

Applied to the habeas corpus context, this procedural default doctrine acts to bar federal review of federal claims that a state court has declined to address because of the petitioner's noncompliance with a state procedural requirement. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730. When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas corpus petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).

12

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735. Applying this presumption, the Sixth Circuit has established a four-step analysis to determine whether a claim has been procedurally defaulted.  *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Using the *Maupin* test, the Court must determine (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and (4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138.

When reviewing those claims not procedurally defaulted, the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 applies to this Court's review of the instant case because Petitioner filed his petition for habeas relief on December 8, 2000, well after the act's effective date of April 26, 1996.  *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  The AEDPA provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of AEDPA, the United States Circuit Courts accorded varying interpretations to the standard of review that a federal habeas corpus court must apply under § 2254(d).[3]  In response to the nationwide variation accorded to the habeas corpus standard of review, the Supreme Court elaborated on the meaning of AEDPA's statutory language, announcing that the recently revised habeas statute "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001)(*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000).

In *Williams*, the United States Supreme Court clarified the language of § 2254(d)(1), holding:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413.  The Supreme Court offered additional guidance regarding the meaning of "unreasonable application."  The Court stated: "A state- court opinion can also engender the 'unreasonable application' of Supreme Court precedent if it 'either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.'"

---

[3] *Compare Green v. French*, 143 F.3d 865 (4th Cir.1998), *and Nevers v. Killinger*, 169 F.3d 352, 358 (6th Cir. 1999)*, with Long v. Humphrey*, 184 F.3d 758 (8th Cir.1999), *and Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3rd Cir. 1999).

*Campbell*, 260 F.3d at 539 (*quoting Williams*, 529 U.S. at 409).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

In addition, the undersigned notes that federal habeas courts are obliged to "accept a state court's interpretation of that state's statutes and rules of practice." *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  Similarly, a federal court is not free to ignore the pronouncement of a state appellate court on matters of state law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).  Lastly, "a determination of a factual issue made by a state court shall be presumed correct."  28 U.S.C. § 2254(e)(1).  A petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *See id.*

The above standards are applicable to the review of Petitioner's claims.

## III.      PROCEDURAL DEFAULT

### A.      First Ground for Relief

Respondent argues that Petitioner has procedurally defaulted his first ground for relief by not timely asserting the claim to the Ohio Supreme Court. *See* ECF Dkt. 12 at 23.  In the instant case, the Ohio Court of Appeals affirmed the trial court's judgment of conviction and sentence on March 27, 2000.  *See* ECF Dkt. #14, exhibit 26.  Petitioner failed to file a timely notice of appeal and

15

memorandum in support of jurisdiction in the Ohio Supreme Court, within forty-five (45) days of the

Ohio Court of Appeals' decision.  In fact, Petitioner took no action for 163 days after the decision by

the Ohio Court of Appeals.  On September 6, 2000, Petitioner eventually filed a notice of appeal and

motion for delayed appeal in the Ohio Supreme Court.  *See id.*, exhibits 27 & 28.  On October 18,

2000, the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed the case

on those procedural grounds.  *See id.*, exhibit 29.

      The undersigned examines whether Petitioner has indeed procedurally defaulted his first ground

for relief, wherein he challenges the validity of his guilty plea, by not filing a timely direct appeal with the

Ohio Supreme Court.[4]  Petitioner had 45 days to perfect his direct appeal to the Ohio Supreme Court,

but instead waited nearly six (6) months to file a motion for delayed appeal.[5]  The Ohio Supreme Court

subsequently denied Petitioner's motion for a delayed appeal and relied on this denial to procedurally

dismiss his direct appeal.  *See* ECF Dkt. #14, exhibit 29.     Applying the *Maupin* test delineated,

*supra*, the Court first finds that Petitioner failed to clearly comply with the Ohio Supreme Court's direct

appeal filing deadline.  Second, based upon the Ohio Supreme Court's decision to deny the Petitioner's

motion for a delayed appeal and dismiss his direct appeal on those procedural grounds, it is manifest to

---

[4]  As an initial matter the undersigned notes that exhaustion is only an issue if the state still provides a remedy for the habeas corpus petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction.  *See Rust*, 17 F.3d at 160.  In the instant case it is clear that Ohio does not still provide a remedy for the Petitioner to pursue because he failed to file a timely appeal with Ohio's highest court.  Therefore, the issue becomes whether Petitioner's claim is barred by his procedural default.

[5]  Under the Rules of Practice of the Supreme Court of Ohio, Rule II, Section 2(A)(1): To perfect an appeal from a court of appeals the Supreme Court, other than in a certified conflict case (which is addressed in S. Ct. Prac. R. IV), the appellant shall file a notice of appeal in the Supreme Court within 45 days from the entry of the judgment being appealed.

the Court that the Ohio Supreme Court's direct appeal filing deadline is actually enforced as a state procedural sanction.  Third, the direct appeal filing deadline was an "adequate and independent" state ground on which the state could foreclose federal review.  *See Maupin*, 785 F.2d at 138.  In the instant case, the last reasoned decision of the Ohio Supreme Court concerning Petitioner's direct appeal constituted a dismissal of his claims based upon his failure to comply with the court's direct appeal filing deadline.  *See* ECF Dkt. #14, exhibit 29.  The undersigned acknowledges that a state procedural bar will be held to bar federal habeas review only when the last reasoned decision of the state court concluded that the claims were barred by a state procedural rule, as in the instant case.  *See Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  Further, according to the Sixth Circuit, a petitioner's failure to raise a claim on direct appeal in the Ohio Court of Appeals or in the Ohio Supreme Court constitutes procedural default.  *See Jamison v. Collins*, 100 F.Supp.2d 647, 674 (S.D. Ohio 2000)(citing *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.1985)).[6]  Based upon the foregoing *Maupin* analysis, the undersigned concludes that Petitioner has procedurally defaulted his first ground for relief by failing to timely appeal this claim to the Ohio Supreme Court.  *See* ECF Dkt. #14, exhibit 29.

Where, as here, Petitioner can no longer present his federal claim in state court, he has waived the claim for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *See Jamison*, 100

---

[6]  *See also Gaston v. State of Ohio*, No. 00-3097, 27 Fed.Appx. 301, 304, 2001 WL 1299264, \*\*2 (6th Cir. August 10, 2001)("It is well settled that a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration before bringing a habeas claim.") *and Lewis v. Randle*, No. 00-3216, 36 Fed.Appx. 817, 819 , 2002 WL 847985, \*\*2 (6th Cir. April 30, 2002)(petitioner procedurally defaulted claim by not presenting it to Ohio Supreme Court).

F.Supp.2d at 674 (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).[7]   After examining the parties' briefs, the undersigned finds that Petitioner has not demonstrated cause for the procedural default of his first ground for relief or that failure to consider this claim would result in a fundamental miscarriage of justice.   The fact that Petitioner was incarcerated and acting *pro se* does not constitute cause excusing his procedural default. *See Hannah v. Conle*y, 49 F.3d 1193, 1197 (6th Cir. 1995), *and Barksdale v. Lane,* 957 F.2d 379, 385-86 (7th Cir. 1992). Another potential cause suggested for Petitioner's procedural default is ineffective assistance of appellate counsel.   However, the undersigned finds that Petitioner has also procedurally defaulted any arguments regarding ineffective assistance of appellate counsel.   Therefore Petitioner's claims of ineffective assistance of appellate counsel cannot serve as a legally cognizable cause for Petitioner's underlying procedural default of his first ground for relief.   *See* section III, B, *infra* p. 17-19.   "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *See Lewis*, 36 Fed.Appx. at 819 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

Finally, the undersigned also finds that Petitioner is not entitled to have his first ground for relief reviewed under the actual innocence exception or put another way that failure to consider his first ground for relief would result in a fundamental miscarriage of justice.   *See McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).   Petitioner has presented no new

---

[7] Petitioner can also excuse his procedural default of the first ground for relief if he can demonstrate that failure to consider this claim would result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750.

evidence that he is innocent. *See* ECF Dkt. 1, 22.

Overall, the undersigned determines that Petitioner procedurally defaulted his first ground for relief because it was not properly presented to the highest state court in a timely manner. *See* ECF Dkt. #14, exhibit 29. Further, Petitioner cannot and has not shown cause for the default or that a fundamental miscarriage of justice will occur if this ground for relief is not reviewed. Therefore, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his first ground for relief and that it be dismissed *with prejudice*. *See* ECF Dkt. #1.    **B.**

**Second Ground for Relief**

Respondent contends that Petitioner has procedurally defaulted his second ground for relief, an alleged denial of effective assistance of appellate counsel, by not properly raising this claim before the Ohio Supreme Court on direct review. *See* ECF Dkt. 12 at 24. In the instant case, this second ground for relief was originally asserted in a Rule 26(B) application for reopening appeal, filed in the Ohio Court of Appeals. *See* ECF Dkt. #14, exhibits 30 & 31. The Ohio Court of Appeals held that Petitioner's claim of ineffective assistance of appellate counsel was barred by the doctrine of *res judicat*a, because Petitioner possessed a prior opportunity to raise the issue of ineffective assistance of appellate counsel through an appeal to the Ohio Supreme Court, but failed to do so. *See id.*, exhibit 35. The Ohio Supreme Court dismissed the Petitioner's subsequent appeal of the Ohio Court of Appeals' Rule 26(B) decision as not involving any substantial constitutional question. *See id.*, exhibit 41.

The undersigned recognizes that alleged errors that were previously raised or could have been raised upon direct appeal may be barred from further review by the doctrine of *res judicata. See State*

*v. Perr*y, 10 Ohio St.2d 175 (1975). More specifically, the Ohio Supreme Court has clearly indicated that claims of ineffective assistance of appellate counsel may be barred by the doctrine of *res judicata* unless circumstances render the application of the doctrine unjust. *See State v. Murnaha*n, 63 Ohio St.3d 60 (1992). In the instant case, the Ohio Court of Appeals denied Petitioner's Rule 26(B) application to reopen his direct appeal and more specifically his ineffective assistance of appellate counsel claim by finding that the application of the doctrine of *res judicata* was just. *See* ECF Dkt. #14, exhibit 35. The Ohio Court of Appeals stated:

> * * * Iglesias possessed a prior opportunity to raise the issue of ineffective assistance of appellate counsel through an appeal to the Supreme Court of Ohio, but he did not do so and has further failed to demonstrate why the doctrine of *res judicata* should not prevent further review of the claim of ineffective assistance of appellate counsel. Accordingly, we find that *res judicata* bars any further review of this claim and that its application is just.

*Id*., exhibit 35 at 3.


Ohio Courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. *See Perry, supr*a. A determination in the Ohio Courts that a claim is *res judicata* in state post-conviction is a procedural default on federal habeas corpus and requires the petitioner to show cause and prejudice for his default to satisfy *Maupin. See Norris v. Schotte*n, 146 F.3d 314 (6th Cir. 1998); *Wong v. Mone*y, 142 F.3d 313, 322 (6th Cir. 1998); *Ewing v. McMacki*n, 799 F.2d 1143, 1149-51 (6th Cir. 1986). *See also Rust v. Zen*t, 17 F.3d 155, 160 (6th Cir. 1994) ("Because Rust failed to raise his constitutional issues in his direct appeal, and because Rust's procedural default constituted an 'adequate and independent' state ground on which the state relied to foreclose judicial review of his

constitutional claims, we may not consider Rust's constitutional claims unless he can show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal.").

Based upon an application of the tenets included in the cited case law to the fact that Petitioner possessed a prior opportunity to raise the issue of ineffective assistance of appellate counsel through a timely direct appeal to the Supreme Court of Ohio, but did not do so, the undersigned finds that Petitioner has procedurally defaulted his second ground for relief. Further, for the reasons stated above the undersigned also determines that Petitioner has not established cause for this procedural default or alternatively established that failure to consider his second ground for relief would result in a fundamental miscarriage of justice. For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his second ground for relief and that it be dismissed *with prejudice*. *See* ECF Dkt. #1.

## IV.     NON-COGNIZABLE CLAIMS FOR RELIEF

### A.     Third and Fourth Grounds for Relief

Black letter federal habeas corpus law dictates that the writ of habeas corpus is only available to correct wrongs of a federal constitutional dimension. *See* 28 U.S.C. § 2254(a), *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), *and Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77L.Ed.2d 1134 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991). It is the obligation of the federal courts to accept as valid a state court's interpretation under state law of the statutes and rules of practice of that state. *See Duffel*, 785 F.2d at 133.

Petitioner's third and fourth grounds for relief allege that the Ohio Court of Appeals and the Ohio Supreme Court, respectively, "abused their discretion" when reviewing the Ohio App. R. 26(B) application for reopening appeal and the subsequent memorandum in support of jurisdiction. *See* ECF Dkt. #1. As discussed *supra*, the Ohio Appeals Court held that the application for reopening appeal was procedurally barred by the doctrine of *res judicat*a. *See* ECF Dkt. #14, exhibit 35. Subsequently, the Ohio Supreme Court declined jurisdiction. *See id.*, exhibit 41. The undersigned agrees with Respondent that neither Petitioner's third or fourth grounds for relief state a cognizable claim for habeas corpus relief because they request this Federal Court to reexamine state court determinations on the state law question of whether the denial of a Rule 26(B) application to reopen a direct appeal comported with Ohio's abuse of discretion standard. Lastly, even though Petitioner mentions violations of such constitutional notions as due process in these two grounds for relief, he fails to articulate to the Court how either of these alleged errors violate the Constitution, laws, or treaties of the United States. Due to the fact that these claims are not cognizable in the federal habeas corpus arena, the undersigned recommends that this Court dismiss Petitioner's third and fourth grounds for relief *with prejudice*. *See* ECF Dkt. #1.

V.      **CONCLUSION AND RECOMMENDATION**

Based upon foregoing, the undersigned recommends that the Court dismiss Petitioner's habeas

corpus petition *with prejudice.  See* ECF Dkt. #1.[8]


                                        */s/George J. Limbert*
Date:   December 13, 2002               GEORGE J. LIMBERT
                                        United State Magistrate Judge


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of service of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S.

140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[8] Based upon this recommendation, the undersigned also concludes that Petitioner's motions to place the case in abeyance (ECF Dkt. #20) and for production of the record (ECF Dkt. #23) be denied.